# In the United States Court of Federal Claims

No. 10-434C

(Filed: November 3, 2014)

| | |
|---|---|
| CRAIG J. URBAN,<br><br>     Plaintiff,<br><br>  v.<br><br>THE UNITED STATES,<br><br>     Defendant. | Civil employment; Motion for summary judgment – RCFC 56; Living quarters allowance (LQA); Plaintiff did not meet eligibility requirements under DSSR § 031.12(b); Summary judgment motion granted. |

**OPINION**

*David Charles Ellin*, Baltimore, MD, for plaintiff.

*Corinne A. Niosi*, Civil Division, United States Department of Justice, Washington, D.C., with whom was Assistant Attorney General *Stuart F. Delery*, for defendant.

**ALLEGRA, Judge:**

  This civilian employment case is pending before the court on defendant's motion for summary judgment under RCFC 56. At issue is whether Craig S. Urban (plaintiff) is entitled to a living quarters allowance (LQA) under relevant Department of State regulations for his time spent in The Netherlands. For the reasons that follow, the court concludes that plaintiff is not so entitled and **GRANTS** defendant's motion for summary judgment.

**I. BACKGROUND**

  The facts in this case are now effectively stipulated,[1] and follow:

---

[1] In his brief responding to defendant's motion, Mr. Urban states that he "accepts the defendant's Statement of the Case."

Pursuant to the Overseas Differentials and Allowances Act of 1960 (the Act), federal agencies have the authority to provide LQAs to certain civilian employees overseas. *See* 5 U.S.C. §§ 5921-5924; *see Bortone v. United States*, 110 Fed. Cl. 668, 670-71 (2013). Specifically, the Act provides that "[w]hen Government owned or rented quarters are not provided without charge for an employee in a foreign area . . . [a] living quarters allowance" may be granted. *Id*. at § 5923(a). The Department of State implemented section 5923 of the Act by promulgating the Department of State Standardized Regulations (DSSR). *See* DSSR §§ 031.1-031.14.

From April 2001 to January 2007, Mr. Urban worked for the United States Army (Army), first, in Eygelshoven, The Netherlands, and later in Goose Creek, South Carolina. On January 7, 2007, Mr. Urban resigned from his position with the Army. Thereafter, he worked for a private firm in Texas and Kansas. During this time, Mr. Urban applied for a job in Heidelberg, Germany, with CACI Premier Technology, Inc. (CACI), a United States firm.

On August 13, 2007, while residing in the United States, Mr. Urban received an offer of employment from CACI to work in Heidelberg, Germany.[2] The offer letter contained a section entitled "Repatriation Related Expenses," which stated:

> This contingent offer letter sets forth the entire agreement between you and CACI concerning your expatriate assignment provisions. CACI reserves the right to change its policies and benefits with or without notice at any time. Otherwise, any such changes must be in writing and must be signed by an Officer of CACI.

It further stated that "[r]elocation expenses shall be granted in accordance with the attached relocation agreement." In addition, the agreement included, in relevant part, the following:

> 2. In order to assist Employee in relocating his primary residence from the **Vaesrade, The Netherlands** area to the **Heidelberg** area, CACI agrees to pay or reimburse Employee for relocation expenses for a total aggregate cost not-to-exceed Four Thousand Dollars ($4,000.00) . . .
>
> * * *
>
> 4. In consideration of the sums to be paid to Employee pursuant to this Agreement, Employee shall work for CACI for a period of not less than twelve (12) calendar months from the date on which Employee reports for work at destination.

---

[2] In its motion for summary judgment, defendant raised the issue whether, *vel non*, Mr. Urban was residing in the United States when he received his employment offer from CACI. However, during oral argument, defendant did not contest that Mr. Urban was living in the United States when he received the offer of employment.

> 5. In the event Employee's CACI's at-will employment shall end prior to the completion of twelve (12) calendar months at destination on account of Employee's voluntary resignation or involuntary discharge by CACI for cause, Employee shall forthwith repay to CACI an amount equal to the total aggregate payments made by CACI pursuant to this Agreement . . .
>
> * * *
>
> 7. CACI shall have no obligation to pay or reimburse Employee for any costs incurred by Employee in connection with a change in residence or work location following termination of Employee's CACI employment for any reason.
>
> * * *
>
> 9. This Agreement sets forth the complete understanding of the parties with respect to payment or reimbursement of expenses associated with Employee's relocation of his residence from the **Vaesrade, The Netherlands** area to **Heidelberg**, and it replaces and supersedes any and all previous understandings, whether written or oral, regarding such subject matter. This Agreement may be amended only in a writing signed by the Employee and all management levels approving the original Agreement.

(emphasis in original). Mr. Urban executed the Relocation Agreement.

     In August of 2007, Mr. Urban moved from The Netherlands to Heidelberg, Germany. On or about August 31, 2007, he began his employment with CACI. Mr. Urban incurred moving expenses of $416; CACI reimbursed Mr. Urban for those expenses. Shortly thereafter, Mr. Urban began to ask about transportation entitlements back to the United States.

     On October 10, 2007, Mr. Urban emailed Michael Grosskopf, CACI's hiring manager and acting director at the time, inquiring about whether he would have transportation entitlements to the United States if his contract were terminated or not renewed. Specifically, Mr. Urban requested:

> I currently have a transportation entitlement from the Government that is good for another 9 months. What is my CACI transportation entitlement if (1) Since this is an "at will" job anything can happen such as contract termination. In that scenario, do I have return transportation entitlements back to the US? (2) If the contract is not renewed do I have CACI transportation entitlements to the US? I was in Europe when you hired me on a tourist visa. Thus, this transportation entitlement issue did not arise. My offer letter is to my South Carolina address but the relocation agreement is from The Netherlands. I just want to cover all bases. . .

Later that day, Mr. Grosskopf responded to plaintiff's email, as follows:

> CACI typically honors the same terms upon your departure as on your arrival, as long as you've been on board for at least twelve months. In other words, hang on to your relocation agreement.

Mr. Urban then responded: "Are you saying that if I am on board for at least 12 months that CACI will honor transportation back to the US? I am not talking about if I quit or was terminated for cause." Mr. Grosskopf responded as follows: "Craig, we'll honor the $ cap on the relocation agreement."

> On October 12, 2007, Mr. Urban then sent the following email to Mr. Grosskopf:
>
> My current relocation agreement does not specify my entitlements back to the United States upon completion of my employment with CACI. It indicates my entitlements when I was hired but not upon completion of the contract/assignment. Can you please provide me with Company Policy on my entitlements on return transportation to the United States upon completion of my overseas assignment with CACI or termination of the contract.

To this October 16, 2007, email, Mr. Grosskopf responded: "As per our conversation, CACI will honor your relocation rights to your home of record in South Carolina in accordance with the CACI Relocation Agreement after you have completed twelve months of satisfactory service against this contract."

At his deposition, Mr. Grosskopf indicated that CACI's policy was to pay for the return of an employee, so long as he or she satisfied the terms of the contract or worked at CACI for twelve months, up to the amount listed on the relocation agreement. Mr. Grosskopf further indicated that since the time of Mr. Urban's employment, CACI included this policy in its relocation agreements.

However, after being employed for only three months with CACI, Mr. Urban resigned from his position in early November 2007. On November 11, 2007, Mr. Urban instead began working yet again with the Army in Eygelshoven, The Netherlands. CACI did not pay for Mr. Urban's relocation expenses back to The Netherlands. *Per Contra*. Mr. Urban repaid CACI the $416 that he had received for his initial move from The Netherlands to Germany as per the Relocation Agreement.

Nevertheless, in November of 2007, Mr. Urban inquired with the Army as to his eligibility for a LQA. On November 28, 2007, the Army denied Mr. Urban's request for a LQA because they believed that he did not meet the eligibility requirements under DSSR § 031.12(b). Specifically, the Army found that Mr. Urban's request was denied because –

> CACI did not provide you with a transportation entitlement back to the United States. Rather, it offered you a relocation bonus in the amount of $4,000 under the proviso that you would satisfactorily complete your contractual agreement

with that company.  A relocation bonus with a set dollar amount is not tantamount to a transportation entitlement to the United States . . .

On January 23, 2008, Mr. Urban appealed the Army's denial of a LQA to the Office of Personnel Management (OPM).  On December 4, 2008, OPM issued a Compensation Claim Decision denying Mr. Urban's LQA request.  Noting the CACI agreement, the decision stated that "the agreement clearly does not ensure return transportation to the United States, or another enumerated location as required by the clear and unambiguous language of DSSR 031.12b(4)."

On July 6, 2010, Mr. Urban filed his complaint in this court.  On November 8, 2010, defendant filed a motion to dismiss pursuant to RCFC 12(b)(6).  On September 21, 2011, this court issued an unpublished opinion denying defendant's motion.  On September 14, 2012, defendant filed a motion to dismiss pursuant to RCFC 12(b)(1) and, alternatively, a motion for summary judgment.  Briefing on the motion ensued.  The case was then stayed pending the resolution by the Federal Circuit of *Roberts v. United States*, 745 F.3d 1158 (Fed. Cir. 2014).  On May 1, 2014, defendant filed an amended notice of supplemental authority, indicating that "[u]pon further consideration," *Roberts* furnished no basis to dispute this court's subject matter jurisdiction over Mr. Urban's complaint.  On May 15, 2014, the court heard oral argument on defendant's motion for summary judgment.

## II.  DISCUSSION

We begin with common ground.  Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* RCFC 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Disputes over facts that are not outcome-determinative will not preclude the entry of summary judgment.  *Id.* at 248.  However, summary judgment will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party."  *Id.*; *see also Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Principal Life Ins. Co. & Subs. v. United States*, 116 Fed. Cl. 82, 88 (2014); *Becho, Inc. v. United States*, 47 Fed. Cl. 595, 599 (2000).

When making a summary judgment determination, the court is not to weigh the evidence, but to "determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249; *see also Agosto v. INS*, 436 U.S. 748, 756 (1978) ("a [trial] court generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented"); *Am. Ins. Co. v. United States*, 62 Fed. Cl. 151, 154 (2004).  The court must determine whether the evidence presents a disagreement sufficient to require fact finding, or, conversely, is so one-sided that one party must prevail as a matter of law.  *Anderson*, 477 U.S. at 251-52; *see also Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) ("'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" (quoting *Matsushita*, 475 U.S. at 587)).  Where there is a genuine dispute, all facts must be construed, and all inferences drawn from the evidence must be viewed, in the light most favorable to the party opposing the motion.  *Matsushita*, 475 U.S. at 587-88 (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also Principal Life Ins.*, 116 Fed. Cl. at 89; *Stovall v. United States*,

94 Fed. Cl. 336, 344 (2010); *L.P. Consulting Grp., Inc. v. United States*, 66 Fed. Cl. 238, 240 (2005).[3]  Summary judgment is warranted in this case because there is no dispute as to any material fact and the moving party (defendant) is entitled to judgment as a matter of law.  *See* RCFC 56(c).

DSSR § 0.31.12, which pertains to "Employees Recruited Outside the United States," states, in relevant part, that:

> Quarters allowances prescribed in Chapter 100 may be granted to employees recruited outside the United States, provided that:
>
> a.  the employee's actual place of residence in the place to which the quarters allowance applies at the time of receipt thereof shall be fairly attributable to his/her employment by the United States Government; and
>
> b.  **prior to appointment, the employee was recruited in the United States**, the Commonwealth of Puerto Rico, the Commonwealth of the Northern Mariana Islands, the former Canal Zone, or a possession of the United States, by:
>
>> (1) the United States Government, including its Armed Forces;
>>
>> **(2) a United States firm, organization, or interest**;
>>
>> (3) an international organization in which the United States Government participates; or
>>
>> (4) a foreign government
>
> **and had been in substantially continuous employment by such employer under conditions which provided for his/her return transportation to the United States**, the Commonwealth of Puerto Rico, the Commonwealth of the Northern Mariana Islands, the former Canal Zone, or a possession of the United States; or
>
> c.  as a condition of employment by a Government agency, the employee was required by that agency to move to another area, in cases specifically authorized by the head of agency.

---

[3]  At another point in his brief, plaintiff erroneously cites the standard of review applicable to a motion to dismiss under RCFC 12(b)(6).  That, of course, is not the standard applicable to the motion at hand.  RCFC 56; *Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed. Cir. 2009); *Riviera Drilling & Exploration Co. v. United States*, 61 Fed. Cl. 395, 398-99 (2004) (discussing both RCFC 12(b)(6) and 56(c) standards).

DSSR § 031.12 (emphasis added); *see also Stephan v. United States*, 111 Fed. Cl. 676, 678 (2013); *Bortone*, 110 Fed. Cl. at 675-76.[4]

While there was some debate as to whether plaintiff was recruited in the United States, there is no debate that, at the time in question, he had not been "in substantially continuous employment by such employer under conditions which provided for his/her return transportation to the United States." This requirement plainly was not met here. *See Stephan v. United States*, 117 Fed. Cl. 68, 71 (2014); *Bortone*, 110 Fed. Cl. at 679. Contrary to plaintiff's claim, the Relocation Agreement did not provide for return transportation to the United States – indeed, plaintiff conceded this point in various email exchanges and in argument before the court. Moreover, the Relocation Agreement plainly does not place any requirements against either CACI or defendant to provide plaintiff a return trip upon his employment ending. Rather, it authorized a one-way move within Europe from Mr. Urban's "primary residence" from The Netherlands area to Heidelberg. In addition, the Relocation Agreement expressly denies Mr. Urban any relocation expenses following the termination of his employment: "CACI shall have no obligation to pay or reimburse Employee for any costs incurred by Employee in connection with a change in residence or work location following termination of Employee's CACI employment for any reason." *See also Stephan*, 117 Fed. Cl. at 72. That concludes the matter.

In contending otherwise, plaintiff does not contend that the email exchange somehow amended that Relocation Agreement. Rather, plaintiff asserts that the email exchange evidences a new agreement that focuses on his return transportation to the United States at the conclusion of his job. Plaintiff asserts that any other interpretation of the exchange gives rise to genuine issues of material fact. The Relocation Agreement, as properly interpreted using normal contract rules, demonstrates otherwise.

"Contract interpretation begins with the language of the written agreement." *Coast Fed. Bank, FSB v. United States*, 323 F.3d 1035, 1038 (Fed. Cir. 2003); *see also Am. Lease Ins. Agency Corp. v. Balboa Capital Corp.*, 579 F.3d 34, 39 (1st Cir. 2009); *Dobyns v. United States*, 2014 WL 4628560, at *21 (Fed. Cl. Aug. 25, 2014). When interpreting a contract, "if the 'provisions are clear and unambiguous, they must be given their plain and ordinary meaning.'" *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1435 (Fed. Cir. 1996) (quoting *Alaska Lumber & Pulp Co. v. Madigan*, 2 F.3d 389, 392 (Fed. Cir. 1993)). Such is the case with the Relocation Agreement here. The existence of this Relocation Agreement precludes plaintiff from arguing that a second contract covered the same subject matter. *See Bank of Guam v. United States*, 578 F.3d 1318, 1329 (Fed. Cir. 2009), *cert. denied*, 561 U.S. 1006 (2010); *Pew*

---

[4] Subsection 031.12(b) may be waived by the head of an agency upon determination that unusual circumstances in an individual case justify such action. There is no indication that such a waiver occurred here.

*Forest Prods. v. United States*, 105 Fed. Cl. 59, 66 (2012).[5]  There are no genuine issues of material fact as to this point.  *See Stephan*, 117 Fed. Cl. at 72.[6]

There is another potential problem here.  Contrary to plaintiff's claims, it would also appear that his entitlement under the CACI return policy never vested because he failed to satisfy the twelve-month requirement in DSSR § 031.12.  DSSR § 031.12(b)(4) requires that the conditions already be in place to insure return transportation to the United States, or another enumerated location.  That did not occur here either.  And the court flatly rejects the notion that the agreement may be construed to allow CACI employees who have worked less than twelve-months, *i.e.*, three months, to still qualify for reimbursement.  In the court's view, it would be unreasonable and illogical to construe the regulation in that fashion – indeed, such an argument would have to be made out of whole cloth.

## III.   CONCLUSION

For the foregoing reasons, the court holds that the Army properly found plaintiff ineligible for a LQA under § DSSR 031.12.  The court hereby **GRANTS** defendant's motion under RCFC 56.  The Clerk is hereby ordered to dismiss the complaint.  No costs.

**IT IS SO ORDERED.**

s/Francis M. Allegra
Francis M. Allegra
Judge

---

[5] *See Baer v. Chase*, 392 F.3d 609, 616-17 (3d Cir. 2004); *see also* Rest. (First) Contracts, § 237 (1932); *United States v. Clementon Sewerage Auth.*, 365 F.2d 609, 613 (3d Cir. 1966).

[6] Without supporting affidavits or other documents, plaintiff claims that he "has first-hand knowledge of at least two employees who, although having worked less than twelve months, were authorized living quarters allowance by the Army."  Such bare claims, of course, provide no basis to defeat the pending motion.  *See Enzo Biochem, Inc. v. Gen-Probe, Inc.*, 424 F.3d 1276, 1284 (Fed. Cir. 2005) ("Attorney argument is no substitute for evidence."); *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1581 (Fed. Cir. 1989) ("Attorneys' argument is no substitute for evidence."); *In re Budge Mfg. Co.*, 857 F.2d 773, 776 (Fed. Cir. 1988) (statements of attorney are "no evidence"); *Mel Williamson, Inc. v. United States*, 229 Ct. Cl. 846, 848 (1982) ("Argument is not fact.").